GAULEY MOUNTAIN COAL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 13205.   Promulgated February 1, 1927.

Petitioner agreed to sell coal to a railway company at 25 cents per ton less than the market price for a period of ten years, in consideration of the railway company constructing a branch line to its mine and purchasing at least 100,000 tons of coal per year for that period. *Held*, that the petitioner may not include in its invested capital the amount of $250,000, representing the difference between market and selling prices for the ten-year period.

*Francis J. Sweeney, Esq.*, for the petitioner.
*M. E. McDowell, Esq.*, for the respondent.

The Commissioner determined a deficiency in income and profits tax of $55,245.43 for the calendar year 1920. The issues in this proceeding concern invested capital and amortization of railway facilities.

The invested capital issue is whether the Commissioner erred in refusing to permit the inclusion in invested capital of the value of certain rights acquired by petitioner under a contract between it and the Chesapeake & Ohio Railway Co., which is the same question as was involved in the appeal of this petitioner, Docket No. 1463, decided by the Board February 9, 1926. See *Appeal of Gauley Mountain Coal Co.*, 3 B. T. A. 655.

The next issue in this proceeding is whether the petitioner is entitled to a deduction for 1920 of $3,571.43 as amortization of railway facilities, and is dependent upon the allowance of the petitioner's claim under the first issue.

The parties stipulated that the facts concerning the questions involved in this proceeding are the same as the facts found by the Board in the *Appeal of Gauley Mountain Coal Co.*, Docket No. 1463, and that such facts may be found by the Board to be the facts in this proceeding. The petitioner admits a deficiency of $42,645.43.

### FINDINGS OF FACT.

The petitioner is a West Virginia corporation with its principal place of business at Ansted. It was organized about 1889 and is engaged in the operation of a coal mine in Fayette County, West Virginia.

Prior to the organization of the petitioner, several attempts had been made by its predecessors in interest to operate the mine here involved, but all such efforts had resulted in failure, due to the lack of transportation facilities for the mined coal.

On October 24, 1889, the Chesapeake & Ohio Railway Co., as party of the first part, and the petitioner, as party of the second part, entered into an agreement, the material parts of which are as follows:

1. The said party of the second part being the assignee of William N. Page of Fayette County, West Virginia, of a lease taken by the said Page from J. M. Payne, Thomas D. Ranson and George Couch, Commissioners, of certain property near Ansted, Fayette County, West Virginia, known as the property of the Hawk's Nest Coal Company, Limited, hereby agrees to supply the said Railway Company with the run of mine coal from the said mines at the rate of sixty cents per ton of 2240 pounds, free on board cars at the mines to the extent of the full capacity of the mines if required by the said Railway Company, except as hereinafter provided.

2. The said party of the first part agrees to guarantee orders and transportation for not less than one hundred thousand tons of the said coal per annum for the period of ten years, provided the said coal shall be suitable for railroad use, which in case of dispute is to be determined by arbitration as hereinafter provided.

3. Nothing in the agreement shall be held to restrain the said Coal Company from supplying coal to parties other than the Chesapeake & Ohio Railway Company, so long as the quantity thus supplied shall not interfere with the furnishing of one hundred thousand tons per annum to the said Railway Company as above provided.

4. The said Railway Company agrees to begin to construct before the first day of December, A. D. 1889, and to complete with all possible diligence, a line of standard gauge railway from the main line of the Chesapeake & Ohio Railway at Hawk's Nest, West Virginia, to the said mines, and to maintain and operate the said road without any charge or freight rate additional to the regular New River charges on coal and coke, and when the said road is com-

pleted to supply to the said Coal Company its due proportion of cars for the prompt delivery of its product without delay, except such as may be caused by unavoidable accidents. The said Railway Company also agrees that the rates on coal to any iron or steel works shall at all times be reasonable and equitable as compared with the rates on coal or coke from other points, and that the said party of the second part shall be entitled to and accorded as favorable rates and facilities as may be enjoyed by or accorded to any agency, individual or corporation engaged in the coal business in the New River section of the railroad.

5. It is further agreed that in case the selling price of the New River coals as a section shall fall below and be furnished at less than eighty-five cents per gross ton free on board cars, then the said Coal Company is to reduce the price pro rata to the Railway Company; but in no event shall any reduction be made which will bring down the net profit on the said coal to less than twenty cents per ton, and if there be any dispute as to what the net profit is, the question shall be submitted to arbitration in the manner hereinafter provided. And in the event that the selling price of coals from the New River section should exceed one dollar per ton, the said Coal Company shall be paid by the said Railway Company a corresponding pro rata additional allowance upon the rate of sixty cents per ton hereinbefore specified.

6. The said Railway Company agrees to pay for the coal sold to or through it by the said Coal Company in cash on or before the twentieth day of the month succeeding the month in which the deliveries are made.

\*     \*     \*     \*     \*     \*     \*

8. The said party of the first part guarantees in the event of its failure to take or sell the total product of the mine or mines that the said party of the second part may sell or dispose of the same upon the same footing with any agency established or controlled by the said Railway Company or any other individual to whom cars or facilities shall be furnished, and shall be allowed the same commission per ton towards the expense of selling as is paid to the New York coal agency of this Company, if it shall then have any and so long as it shall continue, in addition to the selling price upon all sales so effected by the Coal Company independently of the Railway Company and its agency.

The price of 60 cents per ton, specified in the above contract, was 25 cents less than the then prevailing market price, and has at all times since been at least 25 cents less than the prevailing market price.

The Chesapeake & Ohio Railway Co. commenced the construction of the branch line, which was about four miles in length, in 1889, and completed it in 1890, at a cost of approximately $100,000. The full length of this branch line traverses the property of the petitioner. The petitioner has not paid taxes upon this branch line, which has always been, and still is, managed, maintained, and operated by the Railway Company.

During the ten-year period in which the agreement between the two companies was effective, the petitioner supplied the Railway Company with at least 100,000 tons of coal each year, at 25 cents per ton under the prevailing market price,

## OPINION.

LITTLETON: The facts are not in dispute and have been stipulated to be as found by the Board in the *Appeal of Gauley Mountain Coal Co.*, 3 B. T. A. 655. The petitioner claims that the application of law to these facts by the Board in its former opinion was erroneous and " that for the calendar year 1920 the Commissioner erroneously and illegally decreased petitioner's invested capital by disallowing the cost of railway facilities based on its contract with the Chesapeake & Ohio Railway Company amounting to $250,000 or the unamortized portion thereof amounting to $149,999.96."

We have carefully reconsidered this question in the light of the argument of counsel and brief filed. We are of opinion that the conclusion reached in the *Appeal of Gauley Mountain Coal Co.*, 3 B. T. A. 655, was correct and we therefore approve the action of the Commissioner in excluding the amount claimed from invested capital for the year 1920. In view of this conclusion, the petitioner was not entitled to a deduction for 1920 of $3,571.43 as amortization.

*Judgment will be entered for the Commissioner.*

TRAMMELL dissents.